## SUPREME COURT.

JOHN LAFOND *et al.* agt. HENRY W. DEEMS *et al.*

*Mutual benefit associations — dissensions among members — dissolution of — receiver.*

Companies or societies which are not sanctioned expressly by the legislature, pursuant to some special or general law, are nothing more than ordinary partnerships, and the laws respecting them are the same.

While a partnership or association will not ordinarily be dissolved for mere defects of temper in some of the members of the copartnership, the evidence of violent and lasting dissensions is a ground upon which a court of equity will decree a dissolution. So, too, when the whole scheme is found to be visionary or founded upon erroneous principles.

In such a case a receiver will be appointed for an adjustment of the accounts of the copartnership or association, and a decree of dissolution will be made.

*Special Term, June,* 1876.

THE parties in this suit, some forty in number, were members of a mutual benefit association or copartnership which was organized in 1842, under the name of "Washington Tent No. 1, Independent Order of Rechabites," the objects of which were "mutual benefit in the exercise of temperance, fortitude and justice, securing to its membership sympathy and relief in times of sickness and distress, and in the event of death the decent observance of the necessary funeral obsequies; and is based upon and seeks the extension of the principles of total abstinence from all intoxicating drinks." In the course of time the association accumulated about $5,000, which was deposited in different banks in the city of New York, and which, according to the allegations of the plaintiff and of some of the defendants, belonged to and

was the property of all the members equally. The plaintiffs, three in number, were regularly elected trustees, and as such claimed the care and custody of the funds and the property of the association. In September, 1875, Patricius M. Stackpole, one of the defendants, who claimed to be the chief ruler, served a notice on the various banks, warning them not to pay out any of the money except by order of the tent. This and a conspiracy which the plaintiffs allege was formed by the said Stackpole and other defendants to deprive various members of the association of their rights and to gain possession of the funds, gave rise to discords and dissensions among the members. They, therefore, prayed for a dissolution of the association, the appointment of a receiver, and for an equal distribution of the funds among the members.

Eleven of the defendants, by their answer, alleged that the money in question had not been earned by the association in the regular course of collection of dues and fines, but by the transaction of outside business entirely distinct from the objects of the association and the motives of its founders, and in the transaction of such business a feeling of bitter hostility had grown up among the members. They also prayed for affirmative relief that the association be dissolved, the funds equally divided, and they be allowed to organize themselves under such name and rules as they might see fit. Twenty-six of the defendants, by their answer, denied the copartnership, and alleged that the fund was a trust fund for the benefit of the order. They admitted the election of the plaintiffs as trustees, but that they had subsequently been dismissed by a majority vote at a regular meeting of the association; that the funds, according to the constitution and by-laws, were lodged equally with the chief ruler and recording secretary, and that if the trustees thought themselves aggrieved by their dismissal they should have appealed either to the tent, to the high chief ruler of the high tent, or the high tent itself, as provided for in the by-laws. The case occupied four days in being tried, and the testimony revealed a queer state of

Lafond agt. Deems.

affairs in an organization formed for such a laudable purpose. The meetings were very turbulent and boisterous, and all gentlemanly instincts were forgotten, while parliamentary rules were utterly disregarded.

*Ex-judge Walter S. Cowles* and *Henry C. Banks*, for the plaintiffs, and *Geo. F. and J. C. Julius Langbein*, for the eleven defendants, made and argued the following points:

I. Washington Tent No. 1, Independent Order of Recha-bites, is a voluntary association not sanctioned expressly by the legislature, pursuant to some general or special law; is no more than an ordinary partnership, and as such is subject to the supervision of a court of equity (*Austin agt. Learing*, 16 *N. Y.*, 112; *Collyer on Partnership*, §§ 25, 53, 553, 624, 626, 627; *Gow on Partnership, part* 2, 227; *Wells agt. Gates*, 18 *Barb.*, 554; *Dennis agt. Kennedy*, 19 *id.*, 517).

II. The law is the same with regard to joint stock asso-ciations (*Alsen agt. Sewell*, 2 *Wend.*, 327; *Moss agt. Oakley*, 2 *Hill*, 265; *Bailey agt. Bancker*, 2 *Hill*, 188; *Huger agt. McCollough*, 2 *Denio*, 119; *Same case*, 1 *N. Y.*, 47; *Town-send agt. Gowery*, 19 *Wend.*, 424; *Cross agt. Quackow*, 5 *Hill*, 478; *Campion agt. McNair*, 1 *Wend.*, 457; *Chase agt. Barrett*, 4 *Paige*, 148). Opinion of lord chancellor ST. LEONARDS in the case of *St. James Club* (an ordinary club), reported in 13 *Eng. Law and Eq.*, 592, holds the same doc-trine.

III. Voluntary clubs or associations have always been regarded as and dealt with in courts of equity as partnerships (*Greenwood's Case*, 23 *Eng. Law and Eq.*, 422; *Richardson agt. Hastings*, 29 *Eng. Ch.*, 323; *Beaumont agt. Meridith*, 3 *Vesey & Bem.*, 180; *Gorman agt. Russell*, 14 *Cal.*, 531; *Lloyd agt. Larins*, 6 *Vesey*, 773; *Cockburn agt. Thompson*, 6 *Vesey*, 322; *Pierce agt. Piper*, 17 *Vesey*, 8; *Raab agt. Reade*, 5 *Rawl.*, 151).

*Messrs. Stewart and Townley*, for the twenty-six defend-ants, made and argued the following points:

I. " Washington Tent, No. 1, Independent Order of Rechabites," is a voluntary unincorporated association, and as such, is bound by its rules, when not in conflict with the law of the land ; and the courts can interfere no further than to hold the association to a fair and honest administration of those rules. It is not a copartnership within the operation of the equitable remedies afforded by the courts for the protection of the rights of partners, as between themselves ( *White* agt. *Brownell,* 2 *Daly,* 329).

LAWRENCE, *J.* — The claim made by the defendant's counsel, that the plaintiffs have an appropriate remedy under the constitution and by-laws of the Tent, for the wrong which they allege they have suffered, cannot, I think, be maintained. I am convinced, from the testimony, that exhibit B contains the constitution and general laws of the High Tent, and that Washington Tent, No. 1, when instituted, recognized the superior authority of the High Tent; and I do not find that the evidence sufficiently preponderates in favor of the plaintiffs to warrant me in holding that the constitution and general laws, have for many years been regarded by the Washington Tent as of no binding force. There are various provisions in the by-laws which are admitted by all parties to be valid and existing, which clearly recognize the superior body, known as the High Tent. The fifth section of article 11 of the by-laws evidently contemplates the right of an expelled or suspended member to appeal from the decision of Washington Tent. The fourth section of the third article of general laws provides for an appeal from the Primary Tent to the high chief ruler, and for a further appeal from his decision to the High Tent (*See also, section* 5 *of article* 5 *of the constitution as to the appellate jurisdiction of the high chief ruler*). No one, I think, can doubt that this is the appeal which is referred to in the fifth section of the eleventh article of the by-laws. Again, by the sixth article of the by-laws it is provided, " that the officers of this tent shall be such as

are prescribed in article 6, section 2 of the constitution, and shall be elected for a term of six months."

Upon turning to exhibit B, introduced in evidence by the defendants, it will be found that section 2 of article 6 prescribes the names of the officers of the various tents which may be organized under the constitution.

It appears, however, that there has been no meeting of the High Tent since 1860 ; and there is no evidence showing that any such meeting is likely to be held in future; nor does it appear that there is at present such an officer in existence as the high chief ruler, to whom the notice of appeal, provided for by the by-laws and general laws just adverted to, could be given.   Granting then, that if the High Tent could be convened or the high chief ruler could be appealed to, the plaintiffs might be protected by appeal, it is quite apparent that there is no way at present open to the plaintiffs by which such appeal can be taken, or made effectual.

Again, the appeal just mentioned seems to be limited to cases in which a member complains of unjust expulsion or suspension, and does not embrace such grievances as those of which the plaintiffs complain in this action.

The complaint is framed upon the theory that the members of the Washington Tent, No. 1, are partners as to the assets and property of the Tent, and particularly as to the fund therein mentioned ; that a conspiracy has been formed between the defendant Stackpole, the chief ruler, and the defendants represented in this action by Messrs. Stewart & Townly, with the design of unlawfully getting possession of the funds mentioned in the complaint, and of converting the same to their own use.   The evidence reveals a state of feeling among the members which is much to be deplored.

The association was formed in 1842, for the purpose, as the second article of the constitution declares, of " mutual benefit in the exercise of *temperance, fortitude,* and *justice,* securing to its membership sympathy and relief in times of sickness and distress, and, in the event of death, the decent

Lafond agt. Deems.

observance of the necessary funeral obsequies; and is based upon and seeks the extension of the principles of total abstinence from all intoxicating drinks." The members seem to me to have departed very much from the objects of the association, except in respect to abstinence from the use of intoxicating drinks. No ordinary partnership or commercial venture could reasonably be expected to succeed when the persons engaged in it entertain such feelings towards each other as have been exhibited by the members of this association, and I am satisfied that the usefulness of the association has departed.

The evidence establishes that, in the years 1844, 1845 and 1846, as many as 300 or 400 persons attended the meetings of the association, now the whole membership has dwindled down to thirty-nine; with an average attendance of from twelve to twenty-five members at each meeting. A careful perusal of the testimony obliges me to conclude that each of the factions into which the association is divided has been guilty of conduct which cannot meet with the approval of the court.

I can find no justification for the trustees (the plaintiffs) in refusing to produce their books when they were called for by the tent; nor do I see what objection there was to the trustees attending the meetings of the Tent subsequent to the passage of the resolution of October 19, 1875, by which the Tent resolved itself into a committee of the whole on the books. The plaintiffs were present at that meeting, and the resolution seems to have been unanimously passed. It would appear that if a spirit of conciliation had been encouraged after the passage of that resolution, all the difficulties of the association might have been amicably arranged. On the other hand, the defendants, who are alleged to have been in collusion with the chief ruler, seem to have been unnecessarily harsh in their conduct and expressions toward those who sympathized with the trustees and their faction.

The fact of any conspiracy to divert the fund, or to appropriate it to their own use, is explicitly denied by the defend-

ants in their answer and in their evidence, and I do not find that it has been established.

The action of Stackpole, in notifying the savings banks not to pay moneys on the orders of the trustees, seems to have been based upon statements made, that the trustees could and would draw the moneys from the banks at their pleasure.

If this case, therefore, rested wholly upon the allegation of a conspiracy on the part of the defendants, represented by Messrs. Stewart and Townley, to deprive the minority of their rights under the constitution and by-laws, I should feel constrained to dismiss the complaint; but, in another point of view, it appears to me that the plaintiffs have made out such a case as requires a court of equity to intervene. In my opinion, the plaintiffs are right in their position that, as respects the fund now in possession of the Tent, the members of the association are to be regarded as partners.

In *Wells* agt. *Gates* (18 *Barb.*, 557), CLERKE, J., delivering the opinion of the court, says: " Companies or societies which are not sanctioned expressly by the legislature, pursuant to some special or general law, are nothing more than ordinary partnerships, and the laws respecting them are the same" (*see, also, Dennis* agt. *Kennedy,* 19 *Barb.,* 526; *Beaumont* agt. *Meredith,* 3 *Vesey & B.,* 180; *Collyer on Partnership, sec.* 53).

It appears, from the testimony, that the fund now in the hands of the association is mainly derived from the rental of rooms, and that the dues do not amount to enough or more than enough to pay the annual running expenses.

The renting of rooms was certainly no part of the object or purpose of the association, and in entering upon that business the association departed from the design of its founders.

If it be true that as to this fund the members of the association are partners, I think that, in accordance with the principles of several adjudications, the court should decree a dissolution of the partnership and distribution of the fund.

Lafond agt. Deems.

While a partnership will not ordinarily be dissolved for mere defect of temper in some of the members of the copartnership, the existence of violent and lasting dissensions is a ground upon which a court of equity will decree a dissolution. So, too, when the whole scheme is found to be visionary or founded upon erroneous principles (*Collyer on Partnership, sec.* 297; 3 *Kent's Commentaries,* 68, *and cases cited*).

The state of feeling between the members of this association, shown by the evidence, appears to me to bring this case within the authorities referred to, and to call for the appointment of a receiver for an adjustment of the accounts of the association, and for a decree of dissolution. If the parties can agree upon a responsible and trustworthy person as receiver, I will appoint him.

As I have found that the dissolution is necessary, on account of the acts of both of the factions in the association, no costs are allowed.