## N. Y. COMMON PLEAS.

JOHN FISCHER agt. JOHN RAAB *et als.*

*Voluntary associations — dissension among members — when judgment of dissolution will be rendered — Reference, when new hearing will be directed.*

In case of violent dissensions and irreconcilable differences between the members of a voluntary association, judgment will be rendered at the suit of one or more members against all the others dissolving the society, but no action will be entertained for such a purpose upon mere proof of differences of opinion, bad temper, the ordinary disputes common to such societies, nor upon proof of injuries or injustice sustained by one member, through the vote or action of the society, if he have another remedy. Members of such an association must be held to their contract, as expressed in the constitution, by-laws or rules of their society.

When a member of such an association is estopped from objecting to the regularity of a meeting.

Section 1232 of the Code of Civil Procedure relates to new hearings upon objections which are substantial and as justice requires — mere criticisms of the acts of a referee are not such objections.

*Special Term, January,* 1879.

MOTION to dissolve temporary injunction and also to set aside report of referee and for a new hearing and also to confirm report of referee upon a question of fact arising upon the motion to continue said injunction.

The plaintiff, with some seventy-seven others, was a member of the "*Krankew Unterstützungs Verein Deutsche Freund Einigkeit,*" a voluntary unincorporated association, whose object was "mutual assistance of its members in case of sickness and assistance of their heirs in case of death." It was organized in 1872 and up to, and including, the 28th day of April, 1878, had accumulated a fund of about $900, through contribution of its members. This money was deposited in the name of the trustees in the Teutonia Savings Bank, which had become insolvent and the supreme court had appointed

the defendant, Fish, its receiver.   On the 28th day of April, 1878, at a special meeting of the association, at which forty-three members were present, the plaintiff offered the following resolution :   "1st. That from to-morrow [Monday], the twenty-ninth of this month, this association make no more payments, the meetings be suspended, but as soon, however, as the bank makes payments, the secretary shall, through notice, call the members respectively to the present meeting-room.   2d. The whole money of the association shall be equally divided between all seventy-eight members, after deducting the above-named debts" (referring to money due a sick member).   "3d. As without doubt the defunct bank will make different payments in installments, so the money shall be divided and *payments continued*, respectively, in the manner designated in subdivision 1.   4th. *On the last payment, and the respective division, the complete dissolution shall be permanently decided.* 5th. The several books and documents will, for the present, remain in possession of the *usual officers.*"   Thirty-eight members voted for the resolution and five against it.   *After* the president had declared the resolution carried, it was discovered that the constitution declared that the association could not be dissolved so long as *five members* voted against it, whereupon a member, named Rüfenacht, changed his vote, thus making the vote stand thirty-nine for and four against the resolution.

On the 6th day of May, 1878, pursuant to a special notice, about sixty members attended a meeting which was called for the purpose of forming a new association.   At this meeting the plaintiff offered the following resolution :   " That the minutes of April twenty-eighth be entirely overthrown, and that the society continue as before," which was unanimously adopted.   The association then transacted its business as usual, and on the 5th day of August, 1878, for non-payment of dues, and in accordance with the constitution, after being notified, the plaintiff and some twenty-four other members were stricken from the rolls.   The plaintiff then brought an

action, alleging a conspiracy to cheat and defraud him and others out of their interest in the funds of the association, and obtained a preliminary injunction restraining the trustees from drawing and receiving, and the defendant Fish, as receiver, from paying out the moneys deposited in said insolvent bank, with an order to show cause why said injunction should not be made permanent, and why a receiver of all the property of the association should not be appointed.

On the hearing of this motion forty-two of the defendants, who were represented by J. C. Julius Langbein, Esq., produced an affidavit in opposition thereto, sworn to by all of his clients, denying the equities of the complaint and reciting the above facts; this affidavit the plaintiff impeached, and demanded a reference to ascertain the facts. The court referred the question of fact as to " whether the plaintiff was present at the meeting of May 6, 1878, and made the motion to entirely overthrow the minutes of April twenty-eighth, and that the society continue as before," to judge John A. Dinkel, and provided in the order that the plaintiff shall pay the referee's fees, unless the forty-two defendants represented by Mr. Langbein, or a majority of them, shall testify upon said reference that they did not make, for the purpose of their said affidavit, the statement that plaintiff made the motion aforesaid, in which case the defendants represented by Mr. Langbein shall pay such expenses.

The referee reported in favor of the forty-two defendants, and on the plaintiff's refusing to pay the fees of the referee he was committed to Ludlow street jail for thirty days (*This branch of the case is fully reported in the 56th Howard's Reports, page 218, and the proceedings on the habeas corpus are fully reported in the case of The People of the State of New York ex rel. John Fischer, agt. John Reilly, as sheriff of the city of New York, in the same volume, at page 223*).

The referee having filed his report and testimony, the forty-two defendants served a notice on the plaintiff and on the twenty-one defendants seeking affirmative relief, to pro-

ceed with the motion to make the injunction perpetual, and that at the same time a motion would be made to dissolve the temporary injunction. The plaintiff having failed to file exceptions to the referee's report, within eight days as required by Rule 30 (old Rule 39), then moved to set the same aside, and that he have a new hearing. The three motions were argued together.

*George F. Langbein* and *J. C. Julius Langbein,* for the forty-two defendants, made and argued the following points:

1st. The adoption of the resolution of April twenty-eighth, offered by the plaintiff, did not dissolve the association. The law is now well settled "that members of a voluntary unincorporated association are bound by its rules when not in conflict with the law of the land, and the courts can interfere no further than to hold the association to a fair, honest administration of those rules" (*White* agt. *Brownell,* 2 *Daly, p.* 329).

Article 1, section 4, of the constitution of the association, is as follows: "The association cannot be dissolved so long as *five* members favor its continuance." Forty-three members were present at the meeting, thirty-eight of whom voted for, and five against, the resolution, The president declared the resolution carried. If any member felt aggrieved at the decision of the chair, his remedy was by appeal, or if he voted with the majority, to move a reconsideration of the vote, which, if carried, would have placed the association in precisely the same condition, and a new vote would have been necessary.

When a motion to reconsider, the matter stands before the assembly in precisely the same state and condition, and the same questions are to be put to it, as if the vote reconsidered had never been passed    *    *    * (*Cushing's Manual* [*pocket edition*], *sec.* 256, *p.* 134).

Rüfenacht had no right to change his vote after the presi-

dent had announced the result of the vote and declared the resolution adopted.

Section 95. In England, where members of parliament are elected by oral suffrage exclusively, the mode of procedure is as follows :        *        *        *        *        *        *        *        *

Section 99. When an elector has once voted he is not at liberty afterwards to change his vote; but if after it has been entered on the poll-book, it appears to have been taken down for a wrong candidate by mistake, the vote may be corrected on , clear and satisfactory evidence of the mistake, provided application be made for that purpose to the returning officer before the close of the poll (*Law and Practice of Legislative Assemblies, by Cushing, p.* 38).

In the house of representatives of the United States the general rule requires members to be present within the bar of the house when the question is put        *        *        *
Until the calling of the roll is completed and the decision of the house announced, members have a right to be called again and change their vote, and during this period of time, also, absent members, if allowed, as they may be if no one objects, can come in and vote with the others (*See same work at p.* 708).

Section 1828. According to the practice in our legislative assemblies, therein agreeing with the ancient rule and practice of the house of commons, a member may change his vote after he has once given it, by communicating the change to the tellers, if the vote is taken in that manner, before they announce the result ; or, if taken by yeas and nays have his name called again before the decision of the assembly is announced        *        *        *        (*See same work at p.* 709; *see, also, Congressional Globe, vol.* 21, *p.* 186; *Journal of House,* 7*th congress, p.* 342; 20*th congress,* 2*d session,* 357; 29*th congress,* 2*d session,* 494; 31*st congress,* 1*st session,* 1266).

Section 1829. When the members on the one side and on the other of the question are thus ascertained, and the speak-

er's casting vote given the decision of the assembly is thereupon announced accordingly by the presiding officer, either in the affirmative or negative, as the case may be. The decision thus pronounced is the judgment of the house (*Same work at p.* 709 ; *see, also, Congressional Globe, vol.* 11, *p.* 782).

In a legislative body no member is allowed under any circumstances to vote or change his vote after the result is announced by the chair. Under such circumstances, a member, if he desires to have his opinion known, may, if allowed, have a statement put upon the journal, as to the way he would have voted (*Warrington, p.* 25.; *Croswell's Manual of* 1878, *appendix compiled from all parliamentary authorities, page* 23).

Any member requesting to be excused from voting may make, when his name is called, or immediately after the roll shall have been called, and before the result shall be announced, a brief statement of the reasons for making such request, not exceeding two minutes in time, and the house, without debate, shall decide, if it will grant such request, but nothing in this rule contained shall abridge the right of any member to record his vote on any question, previous to the announcement of the result (*Assembly rule* 72, *state of New York*).

2d. The plaintiff's resolution of April twenty-eighth even if legally adopted, under the constitution of the association, did not dissolve the association.

There is quite a difference between a dissolution and a suspension.

" Dissolution." The putting an end to the existence of anything.— *Webster*.

" Dissolution" is the civil death of parliament.—*Blackstone*.

" Suspension." Temporary cessation, interruption, intermission.— *Webster*.

The resolution plainly shows that there was to be a dissolution in the *future,* but only a *suspension* for the present.

The resolution was, therefore, *conditional* ; it was not absolute until the happening of two events :

1. All the money must have been received from the receiver.

2. All the money so received must have been equally divided among the members.

3d. The dissolution of the association being contingent and conditional until the happening of two events, viz., the final payment of the funds by the receiver and the final division of the funds among the members, neither of which events have yet happened, and the plaintiff having, at a subsequent meeting, offered a resolution to overthrow and rescind the resolution of April twenty-eighth ; the association is not dissolved and the plaintiff is estopped from taking any advantage of the adoption of his original resolution.

4th. The plaintiff moves, pursuant to section 1232 of the Code, to set aside the report of the referee and for a new hearing, on the ground that errors were committed to the prejudice of the plaintiff. The referee's report and testimony were filed December twenty-fourth ; no exceptions having been either filed or served within the time allowed by Rule 30 (old Rule 39), the report has become absolute and stands as in all things confirmed. If a party neglects to except to a referee's report for eight days after notice of its filing, it becomes absolute under Rule 39 (Rule 30), although it be defective on its face (*Catlin* agt. *Catlin*, 2 *Hun*, 378).

5th. Where there is a conflict of evidence which the referee finds against one side or the other, the decisions are numerous that the report of a referee like the verdict of a jury is, as a general rule, conclusive (*Bliss Code, p.* 712, *under l and cases cited*). Like such a verdict, it is only to be set aside where the finding is clearly against the weight of evidence, or where, upon the trial, some rule of evidence or principal of law has been violated.

6th. There were no requests to find submitted to the referee before the case was closed. Requests for findings upon which to base exceptions, must be made before the submission of the case to the referee (*Carroll* agt. *The Staten Island R. R. Co.*,

65 *Barb.*, 32). No exceptions lie to the refusal of a referee to find the particulars which go to make up his general conclusion of facts (*Avery* agt. *Foley*, 4 *Hun*, 415).

7th. There are no merits in the application, and the same is only made for delay and in furtherance of litigation. "A new trial ought not to be granted except to attain real justice, and not to gratify litigious passions" (*Lord Mansfield*). In many cases, where the verdicts were against the evidence, and the strict rule of law, or obtained through surprise, the court would not give a second chance of success to a hard action. (*See cases cited*, 2 *Morgan's Essays on New Trials*, *p.* 54).

*Henry Wehle*, *Charles Goldzier*, and *Edward Grosse*, made and argued the following points:

1st. The referee has found matters which were not referred to him by the order of reference.

2d. The testimony taken by the referee does not sustain his findings.

3d. The expulsion of numerous members of the association was illegal and void.

J. F. DALY, *J.*—In case of violent dissentions and irreconcilable differences between the members of a voluntary association, judgment will be rendered at the suit of one or more members against all the others dissolving the society (*Lafond* agt. *Deems*, 52 *How.*, 41). But no action will be entertained for such a purpose upon mere proof of differences of opinion, bad temper, the ordinary disputes common to such societies; nor upon proof of injuries, or injustice sustained by one member, through the action or vote of the society if he have another remedy.

In the case of the society now before the court, the constitution provides that it shall not be dissolved so long as five members favor its continuance. Such provision is controlling in an action to obtain a decree of dissolution, and if five members oppose a dissolution when the vote is put in the

society, or if there be no vote when the action is commenced, dissolution will not be decreed.

The members must be held to their contract, as expressed in the constitution, by-laws or rules of their society (*White* agt. *Brownell*, 2 *Daly*, 329). This society was never dissolved under the provisions of its constitution. On April 28, 1878, a resolution was adopted, "that from to-morrow (Monday), the twenty-ninth of this month, this association make no more payments, the meetings be suspended, but, as soon, however, as the bank makes payments, the secretary shall, through notice, call the members respectively to the present meeting room. The whole money of the association shall be equally divided between all seventy-eight members, after deducting" (the debts to sick members and other expenses). "As without doubt, the defunct bank will make different payments in installments, so the money shall be divided and payments continued respectively in the manner designated. On the last payment and the repective divisions, the complete dissolution shall be permanently decided. The several books and documents will, for the present, remain in the possession of the usual officers. The sum of six dollars and forty-eight cents still in the hands of the treasurer, the full extent of the money shall be paid to brother Mangold."

These resolutions were induced by the failure of the bank in which the society kept its funds. Leaving the question of "complete dissolution" to be decided at a future time, the members voted to divide the funds, when obtained, among themselves.

Had plaintiff asked for an injunction to restrain that distribution, he might have been heard, but his action was commenced after the members had got together again and voted to *continue* the society and to revoke the previous resolution.

This last vote was taken in a regular quarterly meeting day of the society, held on May 6, 1878, at the rooms of the society ; a majority of the members then and there assembled, pursuant to a call, to form a *new society*, but finding them-

selves together, after some deliberation, voted to revoke the former resolution and to continue the society. As to all members not present at that meeting or at subsequent ones, down to the general meeting of August 5, 1878, the proceedings prior to the latter date and after April 28, 1878, were doubtless ineffectual for want of notice of meeting as prescribed by the resolution of April twenty-eighth. But the plaintiff was present and took part at such irregular meetings, and at the first of them, that of May 6, 1878, himself moved the resolution to revoke the vote of suspension passed April twenty-eighth. Finally, on July 15, 1878, the secretary sent a notice to every member of the association of a regular quarterly meeting on August 5, 1878. This notice set the society going again and it has proceeded regularly since. No dissolution has been attempted and no motion made on the footing of the suspension resolution of April 28, 1878. So far as plaintiff is concerned I regard him as estopped by his action at the meeting of May 6, 1878, from objecting to the regularity of that or subsequent meetings on the only ground on which he could object, namely, that a regular notice thereof had not been given pursuant to the suspensary resolution of April twenty-eighth. His right to enjoin the society or the other members is gone because of his participation in the proceedings he complains of, such proceedings not being improper in themselves, not subversive to the objects for which the association was formed, but, on the contrary, directly intended to accomplish and perpetuate its charitable and useful objects.

The plaintiff complains, however, that he was unjustly stricken from the roll of members for alleged default as to dues. Even if he were, such injustice affords no ground for paralyzing the society by injunction until his wrong is righted. It may be that the court will entertain his complaint to do him justice on that point if a wrong has been committed, but manifestly he has no right to injunction. This view applies to all the defendants who join in plaintiff's prayer because of their expulsion for non-payment of dues.

So far as any of those defendants join in plaintiff's prayer for an injunction because of the want of notice to them of meetings between April twenty-eighth and August 5, 1878, their rights and liabilities for want of such notice may be the subject of such decision on the trial, but they are not entitled to enjoin the society since the regular notice was given for the meeting of August 5, 1878.

The report of judge DINKEL, on the question of fact submitted to him, should be confirmed. The objections are not substantial. It would be unusual if with the fatiguing and unpleasant task he has had to perform he should have been able to avoid occasion for criticism, but his report seems to be justified by the evidence in every particular.

Injunction dissolved, with ten dollars costs. Report confirmed and motion for new hearing denied, with ten dollars costs.