### *In re* IMPORTERS' & GROCERS' EXCHANGE OF NEW YORK.[1]

*(Common Pleas of New York City and County, General Term.   December 19, 1889.)*

CORPORATIONS—DISSOLUTION—RIGHTS OF MAJORITY.

> Code Civil Proc. N. Y. §§ 2419, 2429, provide that a majority of the directors of a corporation may apply for a dissolution when they deem it for the interest of the stockholders, and that a final order may be made if it appears to the court that a dissolution would benefit the stockholders, and not injure the public interests. *Held,* that a corporation organized as a business exchange would be dissolved on application, where it appeared that the members had no community of interest; that dissolution was favored by 135 of its 216 members, and also by 13 of the 15 directors, who owned the capital stock and controlled its operations; that the small minority which would alone be benefited by its continuance had not done business on the exchange for years; and that its operations had practically ceased long ago.

Appeal from special term.

Application of Henry F. Hitch and others, trustees of the corporation known as the "Importers' & Grocers' Exchange of New York," for a voluntary dissolution, which was objected to by Henry E. Hawley and other trustees. From an order denying the application petitioners appeal.

Argued before VAN HOESEN, BOOKSTAVER, and DALY, JJ.

*Hascall, Clarke & Vander Poel, (John P. Clarke,* of counsel,) for appellants.   *Frank E. Blackwell,* for respondents.

DALY, J. The Importers' & Grocers' Exchange of New York was incorporated in August, 1883, under the provisions of the act of May 3, 1877, entitled "An act to provide for the incorporation of exchanges or boards of trade." The certificate of incorporation recites that it is organized "to foster trade and commerce in groceries and East Indian and South American prod-

[1] Reversing 2 N. Y. Supp. 257.

ucts, to protect such trade from unjust and unlawful exactions, to reform abuses in such trade, and diffuse accurate and reliable information among its members, to produce uniformity and certainty in customs and usages of the trade and said merchandise, to settle differences between the members of said corporation, and to promote a more enlarged and friendly intercourse between merchants engaged in said trade, and generally to increase the facilities for conducting the trade in groceries and East Indian and South American products." The corporation was organized with a capital of $3,750, divided into 15 shares, to be held by the 15 directors, 1 share by each; and it has a membership of 216 persons, divided into three classes, the first hundred subscribing $250, the second hundred $500, and the third hundred $1,000. There have been issued 100 certificates of the first class, 100 of the second, and 7 of the third. It appears that the members of the exchange are dealers in tea, coffee, sugar, raw and refined, hemp, etc., and joined the exchange to enjoy facilities in dealing in their respective importations, and they have no common interest together. The dealers in tea have found the exchange to be a practical benefit to their business, and oppose a dissolution. The other dealers find the exchange of no use to them, and desire a dissolution. Thirteen trustees out of 15 have applied for the dissolution, and 135 members out of 216 have assented to it. The exchange began business on a large scale in 1883, in rooms at a rental of $7,000 per annum, and at first did a large business in tea, less in sugars, and still less in hemp. In about two years it removed to smaller quarters, at $3,750 per annum, and a year later to rooms at a rental of $450. Little business was done after the first year. Except in tea, nothing could be done, and a majority of the directors, not being interested in that trade, proceeded to reduce expenses by limiting the accommodations for doing business, so that practically the operations of the exchange were stopped. There is a large fund, over $69,000, on hand, lying idle. If the wishes of a large majority of the stockholders and of the members of the exchange were to govern, then it should be wound up; for it is certain from the testimony in the case, which is very voluminous, that the concern is a failure as to them, and, if kept up, must be supported by them for the benefit of a minority engaged in one particular trade. There is nothing to prevent the persons trading in tea organizing an exchange for their own business, without taxing for its support persons not interested.

But it is claimed that the court has no power to make the order asked for, under the circumstances, because the Code provides for a dissolution of a corporation only when it will be beneficial to the interests of the stockholders, and that this means the interests of all of the stockholders. Section 2419 provides that a majority of the directors may apply for a dissolution when they deem it for the interest of the stockholders. Section 2420 provides for a case where the directors are equally divided respecting the management of its affairs. And section 2429 provides that the final order may be made if it appears to the court that for any reason a dissolution of the corporation would be beneficial to the interest of the stockholders, and not injurious to the public interests. The argument of the minority is that the Code contemplates a case where all the stockholders are in a similar situation, and the interests of one is necessarily the interest of all, when the question of the advisability of continuing in business is raised, and that, where it appears that it may be for the interest of certain members to dissolve, but for others, even a very small minority, to continue, the court cannot declare it beneficial to the interest of the stockholders to order a dissolution. Conceding that the respondents' view of the law is correct, and that it must appear that it is for the interest of all the stockholders before a dissolution can be ordered, is it not clear that in the present case it is not for the interest of any members of the exchange to continue its business? The governing body of the directors control the whole operations of the exchange, and they are by an overwhelming

majority opposed to its continuance. In such a state of affairs it is obvious that the business cannot be conducted so as to fulfill the objects of the corporation. No business is now done upon the exchange, and none has been done for a long time past, and none can be conducted in it while this state of affairs continues. The tea men, who object to the dissolution, have done no business there for years. The very reason given by them for the fact, viz., that it is the fault of the directors, who have refused to allow a "call" upon the floor of the exchange, and to furnish "standards" for the tea business, shows that, in view of the large majority against its continuance, the operation of the exchange and its usefulness is ended. As the whole government is with the majority, who have no use for the institution, it is not possible, except by the incessant interference of the courts, to compel them to keep up the exchange so that the minority may derive any benefit from it. In view of this state of facts, it is not for the interest of any member of the exchange to continue its business. Nothing can be done in the future, as nothing has been done for some years past, and a case seems to be made out for the exercise of the powers of the court under the Code. It is analogous to a case where dissensions exist between members of unincorporated societies or co-partnerships, which justify courts in decreeing a dissolution, (*Lafond* v. *Deems*, 52 How. Pr. 41; *Fischer* v. *Raab*, 57 How. Pr. 87;) or the case of corporations created under the general manufacturing act, where the legislature has vested similar powers in the supreme court, to be exercised when the trustees of the corporation are equally divided as to the management of its affairs, (Laws 1876, c. 442; *In re Skirt Co.*, 8 Hun, 508.) The cases cited by the respondents which hold that the dissolution cannot be ordered against the wish of the minority do not arise under the Code, nor under special statutory provisions for dissolving corporations, but are actions in equity; except *In re Insurance Co.*, 1 Paige, 258, which was a proceeding under the act of 1817 for the dissolution of the incorporated insurance companies. The rule which should govern courts in administering the provisions of the Code, invoked in the present case, are well stated in the opinion of the chancellor, who said: "In deciding upon the propriety of a dissolution in the cases provided for in the act under which these proceedings have taken place, this court should exercise its discretionary power, and decree a dissolution, under the same circumstances which would induce the legislature to repeal the act of incorporation on the application of the directors. The court is not bound to decree a dissolution merely because a majority of the directors and stockholders request it to be done. But, when the owners of a very large proportion of the stock find it for their interest to vest their capital in something more productive, it is strong evidence that the interest of the stockholders generally will be promoted by allowing them to withdraw their capital and discontinue the business of insurance. In such a case, the particular interest of the few must give way to the general interest of the many. * * * In this case the wishes of this very small minority of stockholders must give way to the interest of such a large majority, and the corporation must be dissolved." If we are to consider, in disposing of a case of this character, what would induce the legislature to repeal an act of incorporation on the application of the directors, we have indication to guide us in the act above referred to for the dissolution of corporations created under the general manufacturing act, (chapter 442, Laws 1876.) The legislature evidently considered that where the trustees of a corporation were equally divided as to the management of its affairs, and the whole stock of the corporation at the time of such disagreement is owned by the persons being the trustees, or is so divided that the one-half thereof is owned or controlled by persons favoring the course of one-half the number of trustees, and the other half thereof by persons favoring the course of the other half of the trustees, a case is presented for the exercise by the supreme court of its discretion on the application of the trustees,

or any or either of them, to dissolve said corporation. In such a case it is plain that the legislature deemed it better for the interests of all concerned that the corporation should be dissolved, where such a difference of opinion exists among the trustees as makes the performance of the corporate business inconvenient, if not impossible; and this, without regard to the fact that the continuance of the corporation may be of benefit to some, even to one-half, of the stockholders. The Importers' & Grocers' Exchange is, and has been for a long time past, in just such a plight. The diversity of interest among the members, and the consequent difference of opinion as to the advisability of continuing the corporation, make it certain that no benefit can result to any party interested by perpetuating the institution as it exists.

It seems clear to me, therefore, that the application for a dissolution should be granted, that the order for the special term should be reversed, and a final order of the dissolution of the corporation, under section 2429 of the Code, should be granted. The order will be settled on notice of two days by one of the judges of the general term. All concur.